UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>vs.<br><br>KEVIN WILLIAM HARPHAM,<br><br>  Defendant.<br>_____ | No. CR-11-042-JLQ<br><br>MEMORANDUM OPINION and<br>ORDER Re: PLEA AGREEMENT |

On September 7, 2011, the Defendant appeared in open court with counsel and entered Pleas of Guilty to two counts of the Superseding Indictment, subject to his right to withdraw the pleas if the court rejected the Plea Agreement. The two counts to which the Defendant pled guilty were Count 1 and Count 3.

Count 1 charged Attempted Use of a Weapon of Mass Destruction carrying a maximum possible penalty of life in prison and, if a sentence of less than life, supervised release for life. Count 3 charged the Defendant with Attempt To Cause Bodily Injury With An Explosive Device Because of Actual or Perceived Race, Color, or National Origin of a person. The maximum possible sentence for such an offense is incarceration for a period of ten years and not more than three years of supervised release.

In the Plea Agreement the Government has agreed that if the Plea Agreement is accepted by the court, the Government will dismiss Count 2 and Count 4 with prejudice. Count 2 charged the Defendant with Possession of an Unregistered Destructive Device which carried maximum possible incarceration of ten years. Count 4 charged Use of a Firearm (a destructive device) in Relation To a Crime of Violence. Count 4 carried maximum possible incarceration of life imprisonment. Of greater import is the fact that

ORDER - 1

the statutes applicable to Count 4 provide that a person convicted of a Count 4 offense with a destructive device is to be sentenced to not less than 30 years incarceration and such term is to be imposed consecutive to any other term of imprisonment on other Counts. The sentences which must be imposed upon conviction of commission of the offense alleged in Count 4 are the most serious of the four counts and the agreement by the Government to dismiss Count 4 appears to the court to carry the most benefit to the Defendant.

The Plea Agreement proffered to the court for its decision also provided for waiver of the Defendant's right to appeal any of the court's pretrial rulings, his conviction, and the sentence imposed, provided that the total sentence is not more than 32 years of incarceration. The Government reserved the right to withdraw from the Plea Agreement if the court rejected the Plea Agreement or if the court proposed to impose total incarceration sentences of less than 27 years. The waiver of appeal provision in the Plea Agreement plays an important role in bringing closure to this matter.

Upon entry of the two pleas of guilty, the court, on September 8, 2011, entered its Order directing the parties to submit, not later than November 1, 2011, all materials in support of their arguments as to why the court should accept the Plea Agreement. (ECF No. 203). Nothing was promptly filed in response to this Order and the court, on or about October 24, 2011, caused its staff to notify counsel that the court wished to have prompt compliance with its September 8, 2011Order. On November 1, 2011, the parties filed their Request of the Parties for the Court to Accept the Plea Agreement (ECF No. 213), which is now before the court.

Because of the court's concern over the adequacy in the declaration of persuasive reasons for the court to accept the Plea Agreement, the court conducted a telephone conference with counsel on November 7, 2011 wherein the court expressed its concerns over the lack of specificity or discussion of the strengths and/or weaknesses of each side in the matter. The court advised counsel that it appeared that the pleading of the parties

ORDER - 2

was mostly a discussion of the advisory and non-binding Sentencing Guidelines. The discussion of those Guidelines in the submittal reflected the fact that the bare Guideline calculations, without enhancements or departures, resulted in a Guideline range of less than the Plea Agreement sentencing range of 27 to 32 years. While that fact is of import to the court in determining whether the Plea Agreement should be accepted, that matter alone does not control the court's decision.

Federal Rule of Criminal Procedure 11(c)(1)(C) provides in part that the attorneys for the Government and the Defendant may enter into a Plea Agreement that contains a provision for a specific term of incarceration or a range of proposed incarceration as in the matter *sub judice*. Included within that Rule is a recognition that such a Plea Agreement may include a provision for dismissal of charges. Such dismissals in Plea Agreements are commonly referred to as "charge bargains." The Government's agreement in this case to dismiss Counts 2 and 4 are "charge bargains." Since whether or not to include any specific charge against an individual defendant is a matter within the sole discretion of the executive branch of government, in this case the Department of Justice and the United States Attorney for the Eastern District of Washington, the court's review of agreements to dismiss charges is ordinarily limited to a determination as to whether such action is "clearly contrary to manifest public interest." *United States v. Miller*, 722 F. 2d 562, 565-66 (9th Cir. 1983).

Agreements to a specific sentence or, as in this case a sentencing range, are commonly referred to as "sentence bargains." Review of plea agreements with "sentence bargains" is vested in the broad discretion of the district court. Fed.R.Crim P. 11(c)(3)(A). Since the Plea Agreement in the instant matter is a combination of both a "sentence (range) bargain" and a "charge bargain" with the dismissal of two Counts, including Count 4 which carries the most extensive incarceration penalties, the court will review the Plea Agreement as a whole, utilizing the broad discretionary standard.

While Rule 11(c) clearly leaves the decision of acceptance or rejection of the Plea

ORDER - 3

Agreement to the broad discretion of the court, that Rule does not set forth standards or criteria for the court to utilize in making its decision. (See the Advisory Committee Notes to Rule 11). However, as with all discretionary determinations, the acceptance or rejection of a Plea Agreement may not be based upon arbitrary or capricious reasons. The discretion of the court must be, in fact and in law, exercised. *See United States v. Morgan*, 506 F. 3d 705, 710 (9th Cir. 2007). While the November 1, 2011 submittal of the parties in support of acceptance of the Plea Agreement is of limited assistance to the court, the court has now had the benefit of the preliminary Presentence Report (ECF No. 214) which is much more comprehensive and factual than the limited submittal by the parties. However, the Presentence Report and the Probation Office preparing it have been limited by the fact that, upon the advice of his attorneys, the Defendant refused to be interviewed by the Probation Officer. There was a rational basis for that decision prior to the determination by the court as to whether it would accept the Plea Agreement since if the Plea Agreement was rejected and a jury trial ensued, any inculpatory admissions by the Defendant to the Probation Officer could be offered by the Government at trial. Upon acceptance of the Plea Agreement, such rationale would no longer exist.

In evaluating the request for acceptance of the Plea Agreement, this court has had the benefit of presiding over all matters concerning the case, including evidentiary hearings and rulings on extensive pretrial motions, including motions to suppress physical and oral evidence, and a motion to dismiss based upon clear violations of Fed.R.Crim.P. 4(c)(3) and the Defendant's Fifth and Sixth Amendment rights at the time of his arrest. The court has suppressed any statements of the Defendant made during those violations of the Rules and the Government has wisely conceded that motion, thus avoiding any possible reversal of convictions on those grounds except for an argument that the Government's misconduct was so offensive as to warrant dismissal of all charges, a claim that this court has denied and one that does not appear to have a likelihood of acceptance on appeal.

ORDER - 4

In making its decision in this matter, it is obvious to the court that the true benefit to the Defendant is the removal of a possible life sentence. Such a sentence would be considered by any court in view of the egregious nature of the actions of the Defendant, actions which could have led to death and massive injuries to a large number of innocent persons and actions with no rational reason –actions that shock the conscience of the court. In making the Plea Agreement decision, the court has also considered the various factors set forth in 18 U.S.C. § 3553(a).

In its submittal the Government has referred to the large cost of presenting this matter in a lengthy jury trial. While that matter is ordinarily one that plays an important role in determining the acceptability of plea agreements, in this instance, the nature and extent of the alleged conduct of the Defendant far outweigh any cost consideration involved in a jury trial. The Government further states that acceptance of the Plea Agreement will bring finality to the matter and avoid possible Not Guilty verdicts or reversal on appeal. Like all criminal cases, such are matters which favor resolution of criminal cases without trial, assuming the end result is an appropriate one.

At the heart of the Plea Agreement is a capping of any sentence to be imposed at 32 years imprisonment rather than the maximum statutorily authorized sentence of life imprisonment. The Defendant is now 37 years of age. Assuming, without deciding, a maximum 32 year sentence with credit for time served and with an earned 15% "good-time" credit would mean the Defendant would be released in his mid 60s, to many still a relatively young age. However, this is a substantial punishment and incarceration will prevent, and hopefully deter, the Defendant and others from similar actions in the future.

The court can only conclude at this stage of the case that but for the alertness and vigilance of two young Spokane men resulting in the discovery of the explosive device, and prompt and efficient actions by members of the Spokane Police Department, the Defendant would have detonated the device with resultant death and injury to many participants in the Martin Luther King, Jr. Day observance. The court is certain that if

ORDER - 5

that grievous event had occurred, all would be preparing for and participating in a capital punishment trial of the Defendant.

This case has been prosecuted and defended by able and experienced counsel on both sides and their judgment is credited by the court. The court is likewise experienced in determining the acceptability of now very common Rule 11(c)(1)(C) plea agreements, both in this district and elsewhere in the United States. While this is a case that would factually and legally support the imposition of a life sentence and which, had the court been making the initial decision as to whether to offer such a Plea Agreement, would probably not have, there are rational reasons for the course of action taken by the Government and the Defendant, guided by able counsel, in the Plea Agreement. Therefore, the court has determined to exercise its discretion and accept the Plea Agreement. The court will make a determination at the sentencing hearing on November 30, 2011, as to where in the range of 27-32 years the sentence of incarceration should lay to be followed by placing the Defendant on supervised release under strict conditions for the rest of his natural life.

Having removed the apparent principal reason for the Defendant to refuse an interview by the United States Probation Officer, the court suggests that that decision now be reviewed by the defense.

With acceptance of the plea agreement, the court proposes to order that all pleadings in this matter previously filed under seal be unsealed -- with the exception of grand jury materials. Counsel shall advise the court on or before **November 16, 2011**, as to any objections to the entry of such an Order.

The Clerk shall enter this Order and furnish copies to counsel.

Dated November 9, 2011.

s/ Justin L. Quackenbush
JUSTIN L. QUACKENBUSH
SENIOR UNITED STATES DISTRICT JUDGE

ORDER - 6