UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>      vs.<br><br>KEVIN HARPHAM,<br><br>                Defendant. | NO. CR-11-0042-JLQ<br><br>SENTENCING MEMORANDUM |

The sentencing hearing in this matter was held on December 20, 2011. Defendant Kevin Harpham was present, in custody, and represented by Federal Defenders Roger Peven, Kim Deater, and Kailey Moran. The Government was represented by Michael Ormsby, the United States Attorney for this district, and by Tom Rice and Joseph Harrington, Assistant United States Attorneys. This Memorandum will memorialize and supplement the oral rulings of the court.

**I. Introduction**

Defendant Kevin Harpham was before the court for sentencing pursuant to pleas of guilty to Counts I and III of the Superseding Indictment made in open court on September 7, 2011. Those Counts stemmed from the Defendant admittedly having placed an explosive device containing shrapnel coated with rat poison, an anti-coagulant substance, along the Martin Luther King, Jr. Day unity parade route in Spokane, Washington on January 17, 2011. The pleas were made pursuant to a Rule 11(c)(1)(C) plea agreement (the "Agreement") in which the Government and Defendant agreed to a sentencing range of 27 to 32 years imprisonment. The Agreement further provided that the Government would argue at sentencing for a term of 32 years, and the Defendant would argue for 27 years. (ECF No. 200, p. 12). The Agreement further provided that

ORDER - 1

the Defendant would be entitled to withdraw his pleas of guilty if the sentence exceeded 32 years. The Government was entitled to withdraw from the Plea Agreement if the sentence was less than 27 years. The court accepted the Agreement in a written Order filed November 9, 2011. (ECF No. 216).

## II. Guidelines Calculation

While the parties had agreed to a sentencing range of from 27 to 32 years, the court first determined the applicable Guideline (USSG) range. The parties stated in the Plea Agreement that the base offense level was 28. The parties agreement as to offense level is not binding on the court, but the Pre-Sentence Investigation Report ("PSIR") also found the base offense level to be 28, for the violation in Count I of 18 U.S.C. § 2332a(2), Use Of A Weapon Of Mass Destruction, prior to applying the cross-reference according to USSG § 2M6.1(c)(2) and USSG § 2A2.1(a)(1) resulting in a base offense level of 33. The parties also agreed that a 3-level increase would apply "because the intended victims were selected based on the actual or perceived race, color, religion[,] national origin, or ethnicity of any person." (ECF No. 200, p. 11). The PSIR also recommended this 3-level increase. The PSIR thus resulted in an adjusted offense level of 36. The PSIR then recommended a 3-level reduction for acceptance of responsibility for a total offense level of 33. With a criminal history category I, the resulting Guidelines range was 135 to 168 months. No objection to this base calculation was filed by either party. However, the PSIR set forth factors that could warrant upward departures under USSG § 2A2.1 and USSG § 3A1.4. Counsel were also advised orally and in writing (ECF No. 231) that the court was considering these departures and invited supplemental briefing thereon, which the parties submitted.

Defendant filed a response to the draft PSIR in which he stated: "Mr. Harpham has no objection nor additions to the computation of the Offense Level found in the PSIR." (ECF No. 217, p. 3). Defendant also filed a Sentencing Memorandum (ECF No. 221) discussing the § 3553(a) factors and arguing for a sentence of 27 years. Defendant also

ORDER - 2

filed a supplemental memo (ECF No. 233) arguing that the upward departures should not apply. The Government suggested consideration by the court of the upward departure factors.

### A. **Upward Departures**

USSG § 2A2.1, comment 2, provides: "If the offense created a substantial risk of death or serious bodily injury to more than one person, an upward departure may be warranted." Defendant admitted in the Plea Agreement that his offense conduct posed a risk of bodily injury. Defendant's argument now is that the risk was not "substantial." The court rejects that argument and finds that there was a real and substantial risk of death or serious bodily injury to more than one person. Approximately 2,000 people had gathered for the parade. The IED contained over 100 fishing weights coated in rat poison, an anti-coagulant, and was thus capable of inflicting serious bodily injury to more than one person. The court determined that an upward departure of 5 levels was warranted because of the substantial risk of serious bodily injury to more than one person. It was, and is, the conclusion of the court that had the explosive device not been found, and the parade route then changed, the Defendant, who was present among the thousand of participants, would have ignited the explosive device with the result being serious bodily injury, and probably death, to many men, women, and children.

USSG § 3A1.4 provides for a 12-level increase and an adjustment to criminal history category VI where the felony "involved, or was intended to promote, a federal crime of terrorism." Even if the 12-level increase is not applicable by reason of the terrorist target being civilians, instead of government, Commentary Note 4 provides that an upward departure may be warranted where "the terrorist motive was to intimidate or coerce a civilian population." The Ninth Circuit has previously approved of a 12-level upward departure (without increase in criminal history category) where the terrorist activities were directed at private conduct. In *United States v. Tankersley*, 537 F.3d 1100, 1113 (9th Cir. 2008), the Circuit stated: "We therefore hold that the district court's

ORDER - 3

decision to depart - based on its desire to punish terrorist activities directed at private conduct in a manner similar to how it punished terrorist activities directed at government conduct - did not render Tankersley's sentence per se unreasonable." This court found that the Defendant's conduct was intended to intimidate the civilian population who chose to participate in the unity parade on Martin Luther King, Jr. Day. The court further found that a 3-level upward departure was appropriate under Note 4 to USSG § 3A1.4.

The court thus reached a calculation of a final offense level 41 (33 + 5 levels under 2A2.1 + 3 levels under 3A1.4). With a criminal history category I, the resulting Guideline range was determined to be 324 to 405 months.

### III. The 18 U.S.C. § 3553(a) Factors

Section 3553(a) provides that a court shall impose a sentence "sufficient but not greater than necessary" to reflect the seriousness of the offense, promote respect for the law, afford adequate deterrence, protect the public, and provide correctional treatment in the most effective manner. The court considered the factors set forth in Section 3553(a) including the nature and circumstances of the offense and the history and characteristics of the Defendant. The Defendant's statements to the court at sentencing that he only intended to aim the destructive device at an adjoining building were not credible and were completely contrary to the undisputed facts including the coating of the fishing weights shrapnel with rat poison to inhibit coagulation of the blood of injured persons and also contrary to his racist views set forth in his internet messages and blogs. The clear evidence in this case was that the Defendant intended to cause injury and death to participants in the parade and would have done so had the explosive device not been found and the parade route altered.

### IV. Acceptance of Responsibility

The final Guideline calculation determined by the court, prior to the Defendant's sentencing statements, of offense level 41, included a 3-level deduction for acceptance of responsibility. During Defendant's allocution it became clear that he had not accepted

ORDER - 4

responsibility for his offenses as required for a reduction under USSG § 3E1.1. Defendant was not entitled to this adjustment merely by virtue of having pled guilty. See Comment 3, § 3E1.1 ("A defendant who enters a guilty plea is not entitled to an adjustment under this section as a matter of right.").

Based on Defendant's incredible statements at sentencing it became clear that he was not entitled to a deduction for full or partial acceptance of responsibility. Without the 3-level adjustment for acceptance of responsibility, the Offense Level would have been 44 and the guideline range life imprisonment. However, with or without the 3 level reduction for acceptance of responsibility, the appropriate sentence in this matter, having in mind the § 3553(a) factors, was and is determined to be incarceration for a period of 32 years followed by a term of life Supervised Release.

## V. Conclusion

In a case such as this, involving the attempted use of a weapon of mass destruction, motivated by racial animus, the court finds a sentence of 32 years is sufficient, yet not greater than necessary, to reflect the serious and cruel nature of the offense, to promote respect for the law, to provide deterrence to this Defendant and, hopefully, to other misguided individuals, and to protect the public from further crimes by the Defendant.

**IT IS SO ORDERED.**

The Clerk shall enter this Memorandum and furnish copies to counsel. The formal Judgment and Commitment Order will follow.

Dated this 27th day of December, 2011.

s/ Justin L. Quackenbush
JUSTIN L. QUACKENBUSH
SENIOR UNITED STATES DISTRICT JUDGE

ORDER - 5